IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL D. WHITMORE, | No. C 06-05062 SI |
| Plaintiff, | **ORDER REMANDING PLAINTIFF'S DISABILITY CLAIM** |
| v. | |
| JO ANNE B. BARNHART, | |
| Defendant. | |

Defendant, the Commissioner of the Social Security Administration, denied plaintiff Daniel D. Whitmore social security disability insurance under Sections 216(i) and 223 of the Social Security Act. Plaintiff appeals this denial. The parties have now filed cross-motions for summary judgment. For the reasons set forth below the Court GRANTS plaintiff's motion and remands this case for further review.

**BACKGROUND**

**I.    Procedural history**

On January 6, 2004, plaintiff Daniel D. Whitmore filed an application for Social Security Disability Insurance benefits alleging inability to work since June 30, 2003 due to severe advanced arthritis in both shoulders. *See* Administrative Record ("A.R.") at 21. Plaintiff's application was denied on March 16, 2004,[1] and reapplication was denied on July 8, 2004. *Id*. Plaintiff filed a timely request for a hearing, which was held on August 2, 2005. Plaintiff was represented by an SSI certified non-attorney representative Irene Lontz. *Id*. On August 15, 2005, the administrative law judge ("ALJ")

---

[1] The ALJ decision erroneously reports the initial denial date as March 11, 2003. The denial itself is dated March 16, 2004. *See* A.R. at 31.

issued a decision finding that plaintiff was not entitled to disability benefits. *Id.* at 24. Plaintiff timely filed a request for review of the ALJ decision with the Appeals Council on October 13, 2005. *Id.* at 15. The Appeals Council denied plaintiff's request for review on July 31, 2006. *Id.* at 5.

Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) on August 22, 2006. Both parties now move for summary judgment.

## II.   Factual and medical history

The following factual and medical history is taken from the ALJ's decision. Plaintiff disputes certain portions of the ALJ's summary.

> Claimant, a 50-year-old man, was born on July 23, 1956. . . . He has a 12th grade education. The claimant's past relevant work was characterized by the vocational expert as construction truck driver (medium and semi-skilled) and diesel mechanic (heavy and skilled). There is no indication in the record that the claimant has engaged in any substantial gainful activity since the June 30, 2003 amended alleged onset date. His Social Security Earnings Record shows that the claimant met the Title II disability insured status requirements on the date he stated he became unable to work, and he continue[d] to meet them through December 31, 2006.
> The claimant has described persistent, severe shoulder pain necessitating complete left shoulder joint replacement surgery in July 2004. He has also alleged a history of left and right knee arthroscopic surgeries, coronary artery disease with inferior wall myocardial infarction status post stent placement in April 2001, and diabetes.
> The documentary medical evidence includes records of treatment at the San Mateo Community Health Center since June 2003, at which time diagnostic impressions included type 2 diabetes mellitus, history of angioplasty, and history of elevated cholesterol. In July a history of shoulder arthritis was also noted and in August 2003 X-rays were interpreted as showing advanced bilateral glenohumeral osteoarthritis, with progression in the left shoulder since previous films in 1997. A September 2003 note described improving control of diabetes and hyperlipidemia, and clinical cardiorespiratory findings were negative. At that time laboratory testing also revealed negative ANA, uric acid, and rheumatoid factor. As of October 2003 the claimant reportedly had no complaints. Other than blood sugar elevation, there were no additional findings of significance through the remainder of 2003.
> In February 2004, a consultative examination was performed by Board-certified internist Eugene McMillan, M.D., who stated that the claimant reported a history of multiple medical problems, including diabetes without insulin use, hypertension with current blood pressure of 130/80, hyperlipidemia chest pain in 1999 treated by stent placement but with no subsequent nitroglycerin use but continuing cigarette smoking, and longstanding shoulder pains. On physical examination the claimant was able to get on and off the examination table without assistance, and he used no assistive device for ambulation. Clinical findings revealed normal heart sounds and were otherwise unremarkable except for absent ankle jerk reflexes, mildly decreased vibration sense in the lower extremities, and with regard to the shoulders, which showed 50 percent limitation of internal and external rotation bilaterally and 50 percent limitation of left shoulder rotation, with ability to abduct both shoulders to 100 degrees, and full shoulder flexion bilaterally. Dr. McMillan

2

> concluded that the claimant was able to occasionally lift 20 pounds, with no lifting over shoulder height and limited ability to grip, but with no restriction on sitting, ability to stand six hours per day, and no other postural or any environmental limitations.
> Ongoing treatment records indicated in February and March 2004 that the claimant's coronary artery disease was stable and his diabetes was not well controlled but improving. There was no evidence of diabetic retinopathy. The claimant was admittedly not following his prescribed diet, exercise and medication regimen. MRI examinations of both shoulders in March confirmed the presence of bilateral degenerative changes at the glenohumeral and acromioclavicular joints, but there was no evidence of rotator cuff tears. In May 2004 treating physician Jessica Gosnell, M.D., reported that bilateral shoulder surgeries were planned, with an expected rehabilitation time for each procedure. As of June 2004 diabetes was again said to be not well controlled secondary to failure to take prescribed medication. The claimant denied any chest pain, and blood pressure was normal at 125/75.
> Also in June 2004, a medical source statement described incapacitating exertional and non-exertional limitations due to shoulder problems, but in July of that year a left shoulder hemiarthroplasty was performed without complication. Shoulder pain was reportedly improved after the surgery, and the claimant subsequently received both physical and occupational therapy. In November and March 2005 clinic notes again described failure to comply with prescribed treatment of diabetes. March 2005 treatment records also revealed good blood pressure control at 100/70, and the claimant reported continuing but improved left shoulder pain, with abduction to 70 degrees forward flexion to 100 degrees, internal rotation sufficient to touch the left buttock, and external rotation sufficient to touch the top of the head on the left, with better rotation on the right, sufficient to touch the thoracolumbar junction and the back of the head.
> In summary, the substantial medical evidence reveals no complications or current limitations of significance due to type 2 diabetes or to past reported cardiovascular related disease, which is not corroborated by available medical findings. The claimant has a long history of bilateral shoulder arthritis, treated and improved by July 2004 joint replacement surgery on the left (non-dominant) side without complication, and with shoulder motions better on the right than the left.

A.R. at 21-22 (internal citations omitted).

## LEGAL STANDARD

Title 42 U.S.C. section 405(g) of the Social Security Act authorizes judicial review "after any final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). The Court may conduct only a limited review of the final decision and may disturb the decision "only if it is not supported by substantial evidence or if it based on legal error." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *see also Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Even if substantial evidence supports the ALJ's factual findings, his decision must be set aside if improper legal standards were applied in reaching that

3

decision. *See Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002).

The reviewing court has discretion to remand a case for further evidence, or to award benefits. *Moore v. Comm'r Soc. Security Admin.*, 278 F.3d 920, 926 (9th Cir. 2002). Evidence should be credited and an immediate award directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

## DISCUSSION

Plaintiff contends that: (1) the ALJ erred by failing to find that plaintiff's impairments did not entitle plaintiff to disability benefits; and (2) the Appeals Council erred by failing to consider plaintiff's new and material evidence in denying plaintiff's request for review of the ALJ's decision.

### I.     The ALJ's findings

For a claimant to be eligible for disability benefits, he must demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Act regulations establish a five-step procedure to be followed by the ALJ in order to evaluate disability claims. 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). The Ninth Circuit described the five-step procedure as follows:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

4

*Burch*, 400 F.3d at 679. For steps one through four of the analysis, the claimant carries the burden of proving a disability. *Id*. In step five, the burden to show that the claimant can perform other substantial gainful work shifts to the Commissioner. *Id*.

Here, in step one the ALJ found that plaintiff had not been engaged in substantial gainful activity since June 30, 2003. A.R. at 23. In step two, the ALJ found that plaintiff had a medically severe impairment, namely "severe degenerative disease of the shoulders," as well as non-severe impairments caused by diabetes and a reported history of coronary artery disease. *Id.* at 24. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or equalled a listed impairment. *Id*. At step four, the ALJ determined that plaintiff is precluded by his medical impairments from doing past work. *Id*. At step five, the ALJ, considering plaintiff's age, work experience, and residual functioning capacity (RFC), determined that plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including the jobs of cashier and small products assembler. *Id.* As a result, the ALJ found that plaintiff was not disabled as defined by the Social Security Act at any time through the date of the decision. *Id*.

Plaintiff argues that several of the ALJ's findings were based on legal error, or not supported by substantial evidence.

**(A)   Shoulder-related disability**

Plaintiff first argues that the ALJ failed to properly adjudicate a closed period of shoulder-related disability from July 2003 to July 2004. With respect to shoulder function during this period, the ALJ found that:

> considerable weight is generally accorded to treating source assessments but in the present case the pre-surgical assessment dated June 2004, discussed above, is not shown to be consistent with the weight of the other substantial evidence, including opinions of other reporting sources, and is thus not found to be persuasive . . . . The evidence is instead found to be generally consistent with the evaluation by Dr. McMillan, corroborated by the reviewing State Agency Medical Consultants [] and by qualified medical expert Dr. Coleman, describing sufficient residual functional capacity as of February 2004 for light work. . . .

A.R. at 22-23. For the following reasons, this Court finds that the ALJ erred in discounting the assessment of plaintiff's treating physician in favor of the assessment of Dr. McMillan.

5

"Greater weight is generally afforded to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989), *citing Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Id.* (citing *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 n.7 (9th Cir.1989)). Where the treating doctor's opinion is uncontradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In this case, the Court finds that the ALJ did not provide "specific and legitimate reasons," supported by "substantial evidence in the record," for rejecting the pre-surgical assessment of plaintiff's treating physician. The pre-surgical assessment referred to and rejected by the ALJ was that of Dr. Velasco. *See* A.R. at 163-66. Dr. Velasco reported that plaintiff could only "lift and/or carry" "less than 10 pounds" on a frequent or occasional basis. A.R. at 163. Dr. Velasco also reported that plaintiff was "limited in upper extremities" in his ability to push and/or pull, and that he could only "occasionally" reach and handle. A.R. at 164-165. Dr. Velasco also wrote: "Because of the severe arthritis of the shoulder, Daniel has difficulty reaching and handling objects." *Id.* at 165. Dr. Velasco repeated his findings in somewhat more detail in a medical record written on same day he filled out the report form, stating:

> The patient is here for followup to fill out his disability to do work-related activities. The patient with a history of severe arthritis of both shoulders and also history of knee surgery. The patient has very limited ability to work. Basically there is very limited capability to do lifting and carrying of less than 10 pounds. He has no problem with standing or walking and sitting, but again also the patient has problem with pulling and pushing limited to the upper extremities. This has been proven by x-ray and MRI of the shoulders. . . . Because of the arthritis also of the shoulder, he has very limited capability in reaching as well as handling, which is affected by the extreme temperature as well as affecting the capability to operate machineries and at heights.

A.R. at 133.

As discussed, the ALJ rejected Dr. Veslasco's assessment, and instead found the evidence to be

6

more consistent with the report of Dr. McMillan. A.R. at 22-23. Dr. McMillan evaluated plaintiff on February 19, 2004. *See* A.R. at 106. Dr. McMillan did not review any reports from other physicians in reaching his conclusions. *See id.* Dr. McMillan concluded that plaintiff had "severe degenerative disease of the shoulders," and that:

> [Plaintiff] would be able to stand for six hours a day. There will be no restrictions on sitting. He is not currently using an assistive device. He would be able to occasionally lift 10 pounds. He would not be able to engage in activities that involve lifting over shoulder height. There will be no postural limitations. He would have limitations in his ability to grip and lift. There will be no environmental limitations.

A.R. at 108. Dr. McMillan crossed out the "10" in this typewritten paragraph and handwrote "occasionally lift 20 pounds" below the paragraph. *Id.* Thus the only major inconsistency between the reports of Dr. Velasco and Dr. McMillan appears to be the weight that plaintiff could occasionally lift – Dr. Velasco suggested less than 10 pounds, and Dr. McMillan suggested up to 20 pounds.

As mentioned, the ALJ concluded that Dr. Velasco's assessment was "not shown to be consistent with the weight of the other substantial evidence." A.R. at 22. The ALJ did not, however, provide any specific explanation as to how Dr. Velasco's assessment was inconsistent with the "substantial evidence." The ALJ therefore improperly rejected the treating physician's opinion without providing "specific and legitimate reasons" supported by "substantial evidence in the record." *See Murray*, 722 F.2d at 502.

Furthermore, having reviewed the entire record, this Court finds no substantial evidence that would legitimately justify rejecting the assessment of Dr. Velasco. To the contrary, the Court finds substantial evidence that supports Dr. Velasco's assessment. As an initial matter, it is undisputed that plaintiff's shoulder problems were so severe that they required a hemiarthroplasty (replacement of half of the joint) on both shoulders. *See* A.R. at 136, 174. He completed the left shoulder procedure on July 2, 2004, and was scheduled to receive a hemiarthroplasty on the right shoulder as soon as he recovered. *See id.* (it is unclear from the record whether he has had the right shoulder done yet). There is nothing in the record to suggest that these procedures were unnecessary, or that anything but a severe impairment would necessitate such a drastic procedure.

Moreover, the medical source statement ("MSS") of plaintiff's orthopedist, Dr. Nguyen, corroborates the assessment of Dr. Velasco. *See* A.R. at 223-226. Though the MSS of Dr. Nguyen was

7

apparently not part of the record until after the ALJ issued its decision, the Appeals Council placed it in the record, and it is therefore properly considered by this Court in reviewing the ALJ's findings. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) ("we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council."). Dr. Nguyen concurred with Dr. Velasco that plaintiff could only occasionally or frequently "lift and/or carry" "less than 10 pounds," that plaintiff was "limited in upper extremities" in his ability to push or pull, and that plaintiff could only "occasionally" reach. A.R. at 225.

Though the differences between Dr. Velasco's and Dr. McMillan's reports were small, they were not insignificant. Based on testimony of the vocational expert, and in light of Dr. McMillan's report, the ALJ concluded that plaintiff was capable of performing "light work with frequent reaching and handling but [no] overhead reaching," "including the jobs of cashier and small products assembler." A.R. at 24; *see also id.* at 260-261. Dr. Velasco's assessment that plaintiff could only "occasionally" reach and handle would therefore alter the step five determination of what jobs, if any, plaintiff could perform. *See* A.R. at 263-264 (testimony by the vocational expert that an individual "limited to occasional reaching and handling" "could not perform either one of those jobs" (cashier and small products assembler)).

The Court therefore REMANDS this case for the ALJ to consider plaintiff's application giving full credit to the assessments of plaintiff's treating physicians, including the conclusion that plaintiff could only "occasionally," rather than "frequently," reach and handle.

**(B)    Diabetes**

Plaintiff also contends that the ALJ erred in determining that plaintiff's diabetes was not well controlled but improving, and thus was a non-severe impairment. The Court finds that the ALJ had substantial evidence for concluding that plaintiff's diabetes was a non-severe impairment pursuant to 20 C.F.R. 404.1521.

"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. "If an impairment reasonably can be remedied or controlled by treatment or medication, it cannot serve as a basis for a

finding of disability." *Holguin v. Harris*, 480 F. Supp. 1171, 1179 (N.D. Cal. 1979) (citing 20 C.F.R. 404.1507). Here, there is evidence that plaintiff failed to comply with a medical regime that would aid in controlling, if not alleviating, plaintiff's diabetes. Dr. Coleman, who testified before the ALJ, stated that plaintiff "is diabetic. It's not terribly well controlled, but he is on the appropriate medication. It is being addressed. It could probably be somewhat better controlled and the record does state that he has not been fully compliant with his medicine taking. The diabetes again is not severe." A.R. at 254. As in *Holguin*, "[o]ther than the need to take medication, plaintiff has not established how the presence of [this condition] inhibit[s] his capacity to work," *Holguin*, 480 F. Supp. at 1179.

Plaintiff also argues that the ALJ failed to make the factual findings necessary in order to blame plaintiff's failure to follow his prescribed diet, exercise and medication for the severity of his diabetes. Social Security Regulation ("SSR") 82-59 requires the ALJ to make a series of particularized findings[2] before concluding that a claimant has failed to comply with a treatment plan. The ALJ must make such findings, however, only when a disabling impairment is at issue. *See* SSR 82-59 (emphasis added); *Warre v. Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("SSR 82-59 interprets 20 C.F.R. §§ 404.1530 and 416.930 and is binding on the SSA"). Here, because plaintiff failed to show that his diabetes was a disabling impairment, the ALJ was not required to make the factual failure findings required by SSR 82-59.

The Court therefore finds that the ALJ's decision regarding plaintiff's diabetes is supported by substantial evidence and is not based on legal error. *See Ukolov*, 420 F.3d at 1004.

---

[2] Specifically, in order to make a determination that an individual has failed to follow prescribed treatment, the ALJ must find each of the following:

(1) The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity or, in the case of a disabled widow(er) that the impairment meets or equals the Listing of Impairments in Appendix 1 of Regulations No. 4, Subpart P; and (2) the impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and (3) treatment which is clearly expected to restore capacity to engage in any substantial gainful activity (or gainful activity, as appropriate) has been prescribed by a treating source; and (4) the evidence of record discloses that there has been refusal to follow prescribed treatment.

SSR 82-59.

9

### **(C)** **Coronary artery disease**

Plaintiff also argues that the ALJ erroneously concluded that plaintiff's coronary artery disease was stable. The Court disagrees with plaintiff. There was substantial evidence in the record to support the ALJ's finding. Dr. Coleman testified at the hearing that plaintiff's coronary heart disease "was not a clinically active problem right now. He currently has no symptoms of heart disease and he seems to have perfectly satisfactory heart function." A.R. at 254. In the absence of contrary evidence in the record, this was sufficient evidence for the ALJ to conclude as he did.

However, the Court also notes that, during his testimony, plaintiff stated, "I had a little trouble a few months ago . . . It felt like I was having a heart attack. I'm not sure that I did, but I was having a lot of chest pain and went to the hospital." A.R. at 246. When asked about what his doctor said in response to his chest pain, plaintiff responded, "I don't think they really came to any conclusions. I don't know. They didn't think I had a heart attack." *Id.* The ALJ's decision, however, stated that plaintiff "has denied recent chest pains or other heart related symptoms." *Id.* at 23. On remand, the ALJ's decision should reflect plaintiff's testimony regarding the recent episode of chest pain.

### **(D)** **Obesity**

Plaintiff also contends that the ALJ failed to consider plaintiff's obesity at step two and subsequent steps of the disability consideration. Plaintiff points to Dr. McMillan's evaluation, which reported plaintiff's height at 67 inches and weight at 260 pounds. A.R. at 107. Plaintiff argues that a finding of obesity is therefore proper. Further, plaintiff alleges that his obesity impacted his ability to walk.

In *Burch*, 400 F. 3d at 681-84, the Ninth Circuit held that an ALJ did not err in failing to consider obesity where the record did not indicate that the claimant's obesity exacerbated her other impairments, and where the claimant was represented by counsel. Here, nothing in the record explicitly indicated that obesity exacerbated plaintiff's ailments. Neither Dr. Velasco – plaintiff's longstanding treating physician for diabetes – nor Dr. McMillan make mention of plaintiff's obesity. Further, plaintiff was represented by counsel during his administrative appeals, and neither plaintiff nor his counsel raised the issue of his obesity until plaintiff filed his Motion for Summary Judgment in this Court. Therefore, the

1  Court finds that the ALJ did not err in failing to consider plaintiff's obesity.

### (E) Knee ailments

Plaintiff argues that the ALJ failed to determine the severity of plaintiff's knee ailments at step two of the disability consideration. The ALJ's sole reference to plaintiff's knee ailments in the decision is in the Evaluation Of The Evidence, which states that plaintiff "has also alleged a history of left and right knee arthroscopic surgeries." A.R. at 21. Plaintiff testified that he had knee surgery on both knees (one in 1991, one approximately thirty years ago), that his knees are weak and sensitive, and that he has difficulty kneeling. A.R. at 241. The MSSs of plaintiff's treating physicians also found that plaintiff could not kneel or crawl. A.R. at 164 (Dr. Velasco; kneel or crawl); 224 (Dr. Nguyen; crawl). The ALJ failed to make any findings regarding the severity of plaintiff's knee impairments and the effect of those ailments on plaintiff's other impairments.

An ALJ is required to "consider all of the evidence presented" by a claimant in evaluating his symptoms, including claimant's testimony before the ALJ. *See* 20 C.F.R. § 416.929. The ALJ committed legal error by not considering plaintiff's testimony regarding his knees, or the evidence in the record regarding limitations on kneeling and crawling. On remand, the Court instructs the ALJ to consider plaintiff's medical history and testimony regarding to his knee ailments at step two and all subsequent steps of the five-step disability determination.

### (F) Depression

Plaintiff also mentions, with little argument, that the ALJ failed to determine the severity of plaintiff's "depression mental impairment." Plaintiff raised his alleged depression while testifying before the ALJ, stating "[t]he whole situation I'm in has me rather depressed, I guess." A.R. 249. The SSA had previously recorded plaintiff's alleged depression in the Notice of Reconsideration. *Id.* at 40. As with plaintiff's history of knee ailments, there is no indication in the ALJ's decision that plaintiff's depression was considered. On remand, the ALJ's decision should reflect plaintiff's testimony, and any other evidence in the record, regarding depression.

11

**II.     The Appeals Council's Decision**

Plaintiff argues that the Appeals Council erred by not considering evidence submitted after the ALJ's decision, specifically an MSS from Dr. Nguyen.  A.R. 223-226.  In light of the remand of plaintiff's case, this issue is moot.  Dr. Nguyen's MSS is now part of the record, and will be considered on remand.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion [Docket No. 11] and REMANDS this action for consideration of plaintiff's application consistent with the foregoing, and DENIES defendant's cross-motion for summary judgment [Docket No. 12].

**IT IS SO ORDERED.**

Dated: May10, 2007

SUSAN ILLSTON
United States District Judge